The first, and at least for me the only matter, is Great Western v. Fox Rothschild. Mr. Weiner? Good morning, Your Honors. May it please the Court, I'd like to reserve four minutes for rebuttal. My name is Benjamin Weiner, and I represent the plaintiff and the appellate of Great Western Mining&Mineral Company. The case before us involves an alleged conspiracy, where judges having ruled for AGR Options and Thomas Rutter as CEO... Before we get to that, help me with the jurisdiction. Why is there not a jurisdictional problem here? Well, I don't see a jurisdictional problem under Robert Feldman for two reasons. The first being we're not seeing review and rejection of the underlying case. From my reading of the Exxon opinion, right now we're looking at an independent, I should say, an independent claim under 1983, the new information that came. We're not looking to go back into the old cases. Well, isn't the independent claim inextricably intertwined with the prior state actions? This really isn't an adjourned case. This thing is going to be going on long after I leave this earth. From my understanding, not in this case. If we were seeking review and rejection of the underlying cases, then inextricably intertwined would take place. But in this case, since we're not, we're not looking to, looking at the case to overturn it, looking for error. We're not looking to re-litigate the petition to vacate. Right now this is a brand new issue, and if we were seeking to appeal it, we would have filed an appeal to the U.S. Supreme Court. In this case, because it's an independent claim, which there would be an exception for it anyway, that was affirmed in the Exxon case, we feel we have standing to go into the U.S. District Court. I thought that inextricably intertwined was a standard that we really shouldn't be looking at, that maybe the idea that this is a separate independent action under ExxonMobil is the correct way to look at it. That's the way I see it. Your case is a constitutional claim. Is that right? That is correct, Your Honor. Which is totally different from the cases that you presented in the Pennsylvania State Court. That is correct, Your Honor. All right. So, I mean, is that the correct way of looking at it? Because if we look at inextricably intertwined, I think you might have a more difficult burden to satisfy. I agree with you, Your Honor. If we would look at inextricably intertwined, we would be. He's the only one who can say that. I know. I've been practicing. That's what you're doing with all your time. It seems to me that you've raised issues of bias. I'm confused. Why didn't you just, if you found new evidence, why didn't you just go back to state court and ask for recusal and a new trial or have this assigned to a new judge? Why bring it to federal court and have us decide those issues? Well, when I took a look at it, it was a federal question. Our constitutional rights were violated. It didn't appear we had a fair hearing. We didn't have due process in the Philadelphia Court of Common Pleas. And upon review in the Superior Court, I felt it was right to take it outside the Philadelphia court system because if that's where the problem was, out in the Superior Court to go back and have similar. Was there recusal rules before? I mean, imagine a world where if a judge was accused, you could just take your case to the federal courts. We wouldn't like that too much. No, no, no. I understand that. The reason why we're in federal court is because we felt we had a claim under 1983, an independent claim, and that's why we filed it there. As a side matter, I would be not inclined to go into the state of Pennsylvania because that's who the case is effectively against to a degree, even though they're not named to the complaint, regarding the judges. And some judges not recusing themselves, and that may be part of the problem. It would be hard for them to judge themselves here. Let's focus on the complaint. How do you get state action here? Everything that you're alleging happened. It does seem to me, first of all, the Superior Court was wrong when it said that there's no problem. It does seem to me you're alleging conduct, which is a violation of the disclosure clause in the underlying arbitration agreement. But that aside, everything that you're alleging goes to statements and conduct on the part of the judges. It doesn't give you the nexus of the private parties to the state actor judges to give you a 1983 clause of action under color of state law, does it? Well, the way I took a look at 1983 is, one, we had a violation of our constitutional rights. We're alleging that we didn't have due process. The second part of 1983 would be color of law. And from my understanding— But wait, first you can't separate those two. Under color of state law is what gives you the 1983 clause of action. Otherwise, there's no constitutional tort. Agreed. And for color of law, the way I understood it to be is when you're a willful participant in a joint action with the state, then it would be color of law. And a classic example of that would be when a private party, in this case the defendants, are conspiring with the judge. But you just said conspiring. That was the magic word. I know. And I agree that a conspiracy would get you the state action that you would need under Lugar. But all you seem to be—you're not alleging an agreement. You're alleging an agreement. The factual affirmance that you're making don't necessarily go to an agreement. They simply go to certain judges, if you will, all the judges, having an interest in not ticking off Rutter because when they leave the bench, there's a nice job possibly waiting for them with Rutter's firm. But that's judicial conduct. That doesn't give you the state action that you need to get Rutter as a state actor, does it? He's just operating a very successful arbitration company. I agree to that to a point. I agree with you that the issue was whether we could establish an agreement. And that's what the honorable judge was, why they dismissed our case, because he felt we did not have an agreement here. But going back, the way we're looking at it right now, we came upon new evidence. And the new evidence was brought forward after our case was dismissed and during the pendency of our motion for reconsideration. It came from a deposition of Tom Rutter in an unrelated case. May I ask you one thing? And I don't want you to lose your train of thought, but is it that new evidence that creates now sufficient pleading for conspiracy? Or did you have the conspiracy pled in the first and second amendments? I believe we alleged conspiracy, but we didn't properly allege agreement. We didn't have sufficient facts to back it up. You mean you have a better case now with that additional? Well, we have facts. We have legal conclusions, and we felt we had some facts to support it. But the courts didn't feel we did. All right. I would still be interested in your response to Judge McKee's question. I'm sorry. Where is the conspiracy? Well, the conspiracy is this. We believe there is an unlawful parallel conduct. It's very rare that we're going to have two people to come out and say, yes, I gave Rutter the decision. That's not going to be – I thought Twombly and Ickbar said parallel conduct doesn't really make a conspiracy. You need something more than a hunch, something more than what's possible. I agree, Your Honor. Maybe something that's plausible. I agree, Your Honor. You could have lawful parallel conduct. And in Twombly it was – And that doesn't make a conspiracy. It does not make a conspiracy. All right. So – I feel we've crossed the line based upon unlawful parallel conduct. And when I say unlawful – Unlawful is unnatural. You're arguing the unnatural is unlawful. I'm arguing the natural is unlawful. What's the unnatural parallel conduct? Well, here's the way I took a look at my analysis of it. Natural conduct would be when a sitting judge decides one day he's going to retire and then he gets the word out. The arbitration firms, he wants to move on. He wants to get involved in the private arbitration business. That's completely natural. What I believe is unnatural and illegal is when you're not intending to retire and you rule for a party in a case. And then you put them on notice while you intend to remain on the bench. You're not intending to retire. You put them on notice that you're going to come see them for a job one day. The fact that you're putting somebody on notice when you have no intention of leaving – That's the parallel conduct. That's one side of – Parallel, you need at least – I'm not good at geometry, but I think you need at least two lines to get something parallel. You described one line, the judicial part of it. Where's the parallel line running on the other side, the Rudder line? What did Rudder do in response to that? Well, here's how Rudder is all tied in. First of all, we're alleging it was more than one judge from the deposition of Tom Rudder. It's all judicial lines. Exactly. The second part is when the judges went to Tom Rudder, they were putting him in a very funny position. When a judge would go after ruling for Tom Rudder, then approaching him for a job, they were violating numerous judicial canons of conduct. It was the integrity of the court, appearance of bias. They had no idea how Rudder would react. And, in fact, Rudder hasn't acted negatively about it. He didn't dispel it. He didn't come back to the judges and state, from the best of my knowledge, and nowhere in the record does it show it, he didn't come back and state, you shouldn't be doing this, you're crossing the line, you're putting your judicial careers – In the real world? Maybe not in the real world. But, in practicality, a judge is putting – by a judge approaching someone for a job after he ruled for him, it shows the appearance of bias. The judges are really staking the professional reputation. What happens if it gets out and word spreads? The judge's reputation, your reputation, is why I feel I have a fair share. I think the defendants are entitled to something a little clearer than that. And I think that's one of the purposes of more precise pleading, because you really have to know what you're going to defend against. And I think what you're saying presents some problems. I'm looking for, in a case like this, an agreement between the judges, in this case, whereby they agree to make favorable rulings on behalf of the people that appeared before the arbitrator in exchange for a job later on. I gather that's the conspiracy that you're constricting in your pleadings. Have I got that wrong? No, you have that. It's an unnatural parallelism. Let me just state, absent an advanced understanding. But, you see, defending that, I would want to say, where is that agreement? When did it happen? How did it happen? What was said? By whom? Who is involved? And that's the pleading, I think, that Twombly and Iqbal require, so that a defendant knows what to defend against. Well, I see the way we pleaded was the, if, what the court was looking for, they were going to give Rutter a favorable ruling in return for jobs. It was something for something. And then, after ruling for Rutter, they went to him. There was no reason for them to go to Rutter. They actually went to Rutter and affirmed their agreement. And Rutter did nothing to dispel it. It was, it's very hard to prove that two people are going to come at, unless you get them on tape. Tell me something. If we were to agree with you, we would essentially have to disagree with all of the Pennsylvania State Court decisions in this case, which said that there was no misconduct, no deceit, no wrongdoing, no fraud, by any of the actors that you now have as defendants. So we would essentially have to go back and say that was all wrong and there was misconduct, there was deceit, there was fraud, there were quid pro quos. I'm going to rule in your favor for prospect of a job later on. Is that accurate? I don't see it that way. If we were looking for review and rejection of the state court decision, then I would agree with that. But we're not seeking review and rejection. By this court making a decision, allowing this case to move forward, that we could test it. But you're claiming a violation of due process on the basis of what happened in the Pennsylvania State Courts. But from my understanding is the state court judgment would still stand unless we went in there and tried to have it modified or voided, which is not something we're looking to do right now. We believe that this case within the district court stands on its own. I see my time is up. If I just may say one thing of interest. We have some time for a vote. I think you said about four minutes.  Okay, Your Honor. May it please the Court, Your Honor. Thomas A. Cunoff, Fox Rothschild, on behalf of Appellees. The beauty of our system of justice is that anyone can file a lawsuit to right an alleged wrong. But when that lawsuit fails, they don't get to sue the arbitrator and sue the arbitration company, and they don't get to sue opposing counsel because they didn't win. And that's what's going on here. This started when the appellants' signers lost the case. But you can sue them if there was a quid pro quo. I mean, if there was an abuse of the arbitration process, if there was fraud and deceit. Well, then his remedy lay in the Pennsylvania State Courts, which to which he goes. You're making a very good point. He doesn't win any part of the Pennsylvania State Courts because his whole theory is he can't get a fair shake. He says they're in cahoots. But I think to move on, I think the key point is what the Rucker-Feldman doctrine says is that neither the district court nor this court can sit as a reviewing court for the Pennsylvania State Courts. But isn't he right that if it's an independent action, even if they overlap, and that's what ExxonMobil was about, that Rucker-Feldman, all these years we've been looking at Rucker-Feldman and we've been getting it wrong according to ExxonMobil. If it's an independent action, even if it overlaps, then we have jurisdiction and we can hear it. Well, what the Supreme Court said in Exxon is that the Rucker-Feldman doctrine bars claims brought by state court losers complaining of injuries caused by state court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments. That's from the Exxon opinion at page 284. But not if it's an independent claim. Well, that's not what the Supreme Court said because what they said, what happened there is that was a separate claim. They weren't claiming in Exxon that the court was biased. They weren't challenging the judgment and seeking to reverse or review the judgment. This court, neither this court nor the district court, can give the appellants the relief they want without determining, as Judge Fuentes pointed out, that the Pennsylvania state courts were wrong. He can't prevail unless the Pennsylvania courts were wrong. Well, let's say he can prove that. Let's say that's what he wants. He wants a chance to prove that. Well, right. So isn't that an independent claim? And isn't, in fact, the federal courts the better place to put it, as Judge McKee pointed out? He's not going to get a fair shake in Pennsylvania. That's what Mr. Weiner says. He's not going to get a fair shake in Pennsylvania or the state court. Well, then his remedy, I suppose, is to appeal it all the way up. And as the court pointed out, he could have appealed it to the United States Supreme Court on petition for certiorari. Why doesn't he have an independent due process claim, a violation of his due process rights? Because what Rooker-Feldman says is if you can't give relief without determining that the other courts were wrong, then you can't hear it. Well, that's what Rooker-Feldman said. But I thought ExxonMobil opened the door a little bit more to ensure that claims that are totally independent of actions in the state courts may be presented in the federal courts, subject to preclusion. But not if they're inextricably intertwined. And Your Honor raised the issue of whether that standard survived Exxon. I question whether it does. And I would point out to the court, and that was raised in the appellant's reply brief, and I would point out the Gary case. Didn't we straighten out our jurisprudence in light of Exxon there? In the Gary case, it made a footnote reference to Exxon and inextricably intertwined, but didn't resolve it. But I would note that this court – Well, we did say our pre-ExxonMobil jurisprudence was really not that. Right. But I found at least two opinions of this court after ExxonMobil in which the court applied the inextricably intertwined standard. And I refer, of course, to Talia Farrow v. Darby Township Zoning Board, 458F3-181 at 192-193. That's from this court in August 10, 2006. What was the site again? I'm sorry. Sure. 458F3-181. And also the case of Madera v. Ameriquest Mortgage, 586F3-228, decided just this past year. Is it a matter that if we say this inextricably intertwined is the right standard, you win and there's no jurisdiction? But if we say this is an independent action and that's the standard, we go on to the merits? Well, I agree with the first part, that if it's inextricably intertwined as the standard, then I win. I'm not sure that I lose the other way because even if this question isn't inextricably and determining that the state court judgment was wrong. And I don't think they could do that. Why would this be intertwined, though? This is solely the elements of the cause of action are different. The factual predicate to establishing the cause of action, there's certainly some evidence that would come in if he were to get to a jury in this case that was pertinent in the other case, but most of it is totally irrelevant. Well, he wants to get before a jury as the evidence of this purported agreement between Rutter and the state judiciary, which would suggest they didn't have a procedural due process, and that's a whole different evidentiary presentation. Some of it overlaps, but not most of it. But it's a different evidentiary presentation, but it doesn't, and the claim has different elements or may have some different elements, but he can't prevail. A jury couldn't find for him, or a finder of fact could not find for him without finding that the Pennsylvania case courts were wrong. And so it puts this federal court in the position of being the reviewing court of the state. But aren't they wrong? I looked at that Superior Court opinion, and there's one section in there where it just struck me as glaringly wrong given the breadth of the disclosure agreement where the court basically says that there was no error and that the allegations don't give rise to any problem. Well, that wasn't their term. On the part of the parties before it, when you've got this very broad disclosure requirement, which would seem to me to clearly require that these kinds of disclosures be made. Well, that may be the court's opinion, but I think that that opinion is the opinion of the Pennsylvania court. It is binding on the parties, and the comedy and the federalism deference that is set forth in the Rooker-Feldman doctrine prevents the federal courts from reviewing that determination, other than the United States Supreme Court, of course, from reviewing that determination and determining it's wrong. Did you argue Rooker-Feldman before the district court? Although it's subject matter jurisdiction and not waived, it's not raised, we did raise it in our reply brief on the initial motion to dismiss. It was docket number 13, and it was raised at pages 4 to 6. The brief, of course, is not in the appendix, but it is in the record. I don't have the case in front of me, but I thought that ExxonMobil, in ExxonMobil, the Supreme Court stated that the test is whether the federal plaintiff has some independent claim. That's the test. In other words, it was a broader doctrine than inextricably intertwined to allow for more cases to be presented in federal court. I mean, isn't that the new test? Well, I think the new test is the one I recited, which is from the opinion, which is that it bars claims brought by state court losers complaining of injuries caused by state court judgments rendered before the action was brought and seeking review of that judgment. You have to conclude that that's what he's doing. He's bringing a due process, a 1983 constitutional due process violation claim. But what injury is he complaining of other than that he lost the case? And if that's the injury he's complaining of, it comes squarely within ExxonMobil. Well, that's not the injury he's complaining of. He's arguing that he was denied his constitutional right to procedural due process. The result of that was that he lost. He's asking for damages. He's asking for damages based upon his – you're really arguing the kind of – I guess it's the Seventh Circuit case that gets into whether or not you can have a constitutional tort without getting into the issue of damages, because to get into the issue of damages, you then have to show that the state court proceeding was wrong. If it's not wrong, there's no damages, there's no tort. The Nieces case, and that's kind of where you're going with this. Right. And if I could bring another decision to the Court's attention, just this past August, it's an unreported decision of this Court. In the case of Warren v. Baker, the number of – I have no idea how at least my hair stands up. I don't have a lot of it left. When I hear unreported, there's a reason why it's unreported. I appreciate that, Your Honor. And we didn't cite it in our brief because it is an unreported case, but it's number 07-4265, 2009 Westlaw 2700166. And Chief Judge Sciricca wrote the opinion with Judges Sloviter and Fischer on the panel, and it's this very case. The plaintiff in Warren lost in the Dauphin County Court of Common Pleas, and he went to federal court in the Middle District of Pennsylvania, and he sued everybody. He sued the judges. He sued the lawyers. He sued claiming conspiracy. It's this very case. And Judge Sciricca wrote the opinion and said, this is barred by Rooker-Feldman. This is exactly what Rooker-Feldman said. Was that pre-ExxonMobil? No, this was from August 28, 2009. All right. And Judge Sciricca cites the language I've been quoting from ExxonMobil and uses that as the basis for saying that Rooker-Feldman bars this claim. It's got to be right if the Chief Judge wrote it. Nevertheless, I've never known him to be wrong about anything. He disagrees with me. I'm not going to disagree with Chief. Remember that. I'm not going to disagree with Judge Sciricca. If we were to get past this issue of jurisdiction, because the merits become important also. Right. And the district judge in this case dismissed the third amended complaint. But he did so after concluding that there would be prejudice to the defendants. And I was looking for reasoning why it was prejudicial, and I didn't find any. So I'm wondering if we have sufficient reasoning on the record to dispose of this case or not. Did you argue that there was prejudice to you? We did not get to respond to the third amended complaint. Judge Walls dismissed it. So there was nothing on the record suggesting that you were prejudiced by the third amended complaint. We had argued that in response to the first and the second amended complaints that it still did not state a claim. All right. But that's different. Right. And the appellants filed the third amended complaint. And before we could respond, Judge Walls issued the order from which they appealed. So saying that there would be prejudice to the defendant. Yes. Isn't that wrong? I don't know if it's wrong. I think the reasoning is wrong. Well, it's wrong because there's no reasoning. There has to be reasoning to dismiss a complaint on the basis of prejudice. Well, I think it's certainly prejudicial to the appellees to have to keep responding to these claims. I mean, we had a claim. Well, then, you know, in every case you could argue there's prejudice. But this is his fourth bite at the apple just in this case. Yeah, but you didn't say that. In other words, you didn't present that argument. We didn't have a chance. It was four days later or eight days later. How do we sustain a dismissal based on prejudice? We have no reasoning in the record why it was dismissed based on prejudice. We can sustain it based on futility. All right. Because it fails to state a claim. As Your Honors are discussing with the counsel for appellant, there's simply no allegation here on the side of any of the named defendants below that they participated in any kind of agreement or conspiracy. There's no allegation of any acts by them under Iqbal and Twombly that would give rise to a plausible belief that there was a conspiracy, that they didn't take any actions. The panel was earlier asking Mr. Weiner what evidence there was that Mr. Rutter took any actions. And I agree. There's no evidence that Mr. Rutter took any actions that would point to a conspiracy. There's even less evidence that Fox Rothschild or any of its attorneys took any actions that would point to a conspiracy. Is there evidence that the judges involved in the state court proceedings that were reviewing the claims that were made based on the arbitration, were any of those judges mentioned in the complaint as part of the conspiracy? He did not identify them by name. Were any judges mentioned by name in the complaint? Not that I'm aware of. So we don't know who the actors in the conspiracy are, who it is alleged made favorable decisions in order to get jobs later on? No. I mean, there's the deposition testimony where he said that they did not approach him. He did not approach them. There's simply no evidence. So the judges are mentioned as a they, that is, as a group of conspirators? Well, if you look in the supplemental appendix we submitted, the attorney taking that deposition went through and asked if Mr. Rutter knew any of certain judges. And Mr. Rutter said yes or no, depending on whether the judge knew. And then the next question was a they, and it's they as to who it refers to. But there was no follow-up as to which judges approached him, which judges said anything to him. There's no allegation about any specific judge. Isn't this the sort of thing that is – that's what discovery is for, to find out the names and the dates and the places? But under Iqbal and Twombly, he has to come forward with at least a – sufficient facts. Sufficient facts to make it plausible that there's a conspiracy. And as I think Judge McKee was pointing out, all the allegations are directed at judges. There's no allegations that Mr. Rutter did anything that's consistent with a conspiracy. There's no allegation, certainly, that Fox Rothschild or any of its attorneys did anything consistent with a conspiracy. The only thing Fox Rothschild and its attorneys did was defend the claims. And as the United States Supreme Court said in the Sparks case, seeking relief in the courts, filing briefs, and asking for rulings is not – is not – is not state action. Which gets me to the last point. Well, wait a minute. Why isn't there state action here if the – I mean, just on the basis of allegations, that there are state judges who, it is alleged, were part of a conspiracy, whether true or not? Whether there's sufficient pleading or not. At least the implication of state actors is part of a conspiracy. Isn't that state action? Well, that's why I think the arguments are intertwined, because there's no – there's no allegations to tie any of the defendants to the conspiracy. And so, yeah, I suppose, in a sense, the state action and futility wind up being two sides of the same coin. And I see that I've got my last 10 seconds, but – Can I – let me just ask you another question. I mean, I asked your adversary, I mean, couldn't a lot of this – this new smoking gun evidence, couldn't this all have been raised in state court? I mean, you know, in the context of a rule – if you were in federal court, it would be a Rule 60 motion to say, newly discovered evidence, let's reopen this thing and deal with it here in state court. Exactly. I agree completely, Your Honor. He could have taken a direct appeal if it was after the time. He could have made a Rule 60 – the equivalent of a Rule 60 motion in Pennsylvania state court. Well, he's going to argue futility again. He's going to say, well, you keep throwing me back to the place where I can't get a fair deal. That's what – that's what he's arguing. And then his remedy is to keep – I mean, is to keep going up to the Pennsylvania courts and ultimately to the United States Supreme Court. But you can't use the federal courts as the end run around a state court system because you think it's corrupt. Thank you. Thank you. Thank you, Your Honor. I just would like to address one or two points on rebuttal. The case of Exxon on page 273, and I read when we're talking about the independent action or the independent claim. What does 1257 stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated? Page 273? 293. Okay. I'm going to say it starts at page 280. All right. I'm sorry. Go ahead. That's okay. Because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, even though one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles or preclusion principles or other principles. So an independent claim, the proper place to do it in record for Brooker-Feldman would be in U.S. District Court. I also emphasize we're not seeking a review of the two state court actions. We're not seeking a review for error of law by the judges. We're going in to redo the elements there. All right. Where are we to get past the jurisdiction issue and the state action issue, the procedural issues, and where are we to get to the merits of your complaint? All right. Where are we to do that? A point was just made about how you constructed the conspiracy in the complaint. You didn't mention any judge by name. You didn't link any particular judge to a conspiracy. And you didn't state where the conspiracy occurred, the terms of the conspiracy, what the judges were supposed to do in exchange for the prospect of future employment. How do you get past these new pleading requirements so that you would avoid a 12B6 dismissal? The way I would approach it would be this. Right now, we don't know the exact names. There were many judges that ruled and different panels that ruled in the two cases. But before you alleged in your pleading, you must have some idea that there was something wrong occurred by this group of individuals. Here they are. You should have sufficient information. Didn't Rutter give you that at the deposition? Yeah. He said he went through the names of judges. No, no, no. That wasn't our deposition. That was an unrelated case. Fox Rothschild filed suit against the former attorney for Great Western on a wrongful use of civil proceedings in Pennsylvania State Court under the Dragonetti Act. Rutter is one of the participants. He's the plaintiff in that. The deposition was taken by a former attorney, and that came up. Can we get into that for a minute? I don't want to take time arguing a motion, but you opposed. I mean, you rely heavily on that, and yet opposed its admission to the record before us. Can you explain why? Why opposed it? Why can't we see the deposition testimony or consider it? Oh, I would want to bring that into the case. But at this late point, what they were not doing is they were opening up with eight pages, not one page, and I thought I wouldn't have the opportunity to address it. I would, by all means, like to address it. It's going to be addressed if we move forward because that's important evidence. But right now I took a few statements and used that in the record. I should say put it in our appendix, and I argued it. During the course of their reply brief, I should say Pelley's brief, and any other opportunity they had, they never addressed it. Then at this late moment, when oral argument was granted, I believe on the 5th, the next day they filed this. They wanted another crack at an argument without allowing me to respond. Can I ask you one question? Can you tell me how, I mean, looking at the parties in this case, how Fox Rothschild conspired with anybody to do anything wrong? Why Fox Rothschild? Because the attorneys for Fox Rothschild were agents of Fox Rothschild. Fox Rothschild was a defendant in the suit along with Tom Rotter and AD Options, and all these parties were the defendants, and that's why they're named in it. Yeah, but again, what was the conspiracy? They conspired to do something illegal. Well, let me tell you what the conspiracy which I see is this. They were all willful participants in a joint action with the state. When I say a willful participant, I equate it to a bank robbery. Rotter and AD Options went in and robbed the bank. Fox Rothschild drove the car. They're claiming they're not responsible. They knew about what was going on because James Wiley gave an affidavit. In the affidavit, he stated that Robert Tintner had gave him a call and stated when our POs came out that there was no way you're going to win in this court in Pennsylvania. The judges will never rule against Rotter based upon his relationship with them. Fox Rothschild had knowledge. Robert Tintner had knowledge. You just can't throw up your hands and say we just filed complaints. They had a responsibility. That is the kind of—one, it's just his opinion. And the bank robbery, the analogy I was trying to hear is more closely resembling this. If you look at the manager behind—the unarmed manager behind the desk, not near the alarm button, watches someone come in, present a demand note, rob the bank, leave, and the manager stands there, you're arguing that the manager is part of the robbery because he had knowledge this was happening and he let it happen. That's tantamount to me to the position you're putting the non-state actors in here. They had knowledge that judges were going for Rotter, basically preparing the way for the retirement, and the private party, Rotter, let it happen. When you make the bank robbery analogy, it does strike me as very close to that, but how do you get the manager in as part of the bank robbery in that scenario? The way I would bring the manager in is if the manager was receiving a benefit, Your Honor, if the manager was being paid off by the bank robbers. In this case here, Fox Rothschild and AZR Options, along with Rotter and Tom Paradise, I'm sorry, not Robert Tinter, were all defendants in the state case. By the judges ruling for them, they extracted a tremendous benefit. They didn't have to pay damages. Which suggests that even absent any kind of relationship, the judges would not have ruled for them anyhow. It may just be that they had a meritorious claim. The judges wouldn't. It's almost, I mean, it's such a can of worms because if we were right, then it taints any decision on the part of the state court, even if that state court decision is legally unassailable. I'm not sure it is because of the strength of the arbitration disclosure agreement, as I said. Let me submit this. Our belief is absent an advanced understanding be in place. These judges, from the best of my knowledge, good reputations, they would have not taken such a reckless chance and blindly approached Rotter. They just ruled for Tom Rotter. They had no intention of leaving the bench. How could you then go up and request a job for something in the future? It resonates something for something, your quid pro quo. On the part of the judges, it certainly does, but I'm still trying to find out how Rotter becomes a state actor. Well, he was a willful participant in it because when the judges- as soon as he sees the judge come in, he's going to say, wait a minute, I'm out of here, I'm not talking to you. No, not that, but right now, based upon what the Tinter statement was to Jim Wiley, there was an understanding. There was something in place that they knew that if they delivered a decision for him, for Rotter and easier options, benefits. How would they know that? Because Rotter never-it's not alleged that Rotter did or said anything to the judges to suggest something like, I remember who my friends are. One of the great lines uttered by all Philadelphia ward leaders around primary time, I remember who my friends are. There's no allegation that Rotter said, I'll take care of those who take care of me. There's nothing like that in there. I'm still starting to wonder how you get to the second part of the conspiracy. It seems to me you've got a conspiracy where one conspirator is agreeing with himself or herself, but you need more than that or you can't get an agreement. You've got unilateral action on the part of state actors who are immune. Well, the way I look at it is twofold. One, Rotter didn't dispel it either. He didn't just tell the judges, cut him off, stop. I don't want to hear this. You're crossing over the line. You should not be talking to me about this. You just ruled for me. He didn't dispel it. He was okay with it, and that's very disturbing. But in your scenario, if that gives rise to a conspiracy, I'm not sure it does, the conspiracy occurred after the ruling. That's correct. It was understood before the judges approached Rotter after the ruling, and that's what's so disturbing. It gives the appearance of bias. It taints the decision. Let me put it this way. I ask each and every one of you, if you rule for Fox Rothschild in this case, would it be appropriate for you to each contact Fox Rothschild in the coming months and put them on notice that you're going to come there for a job once? Clearly it wouldn't be, but that doesn't mean that Fox Rothschild did anything wrong. The decision's over. It's gone. And after the decision's handed down, somebody goes to Fox Rothschild. It doesn't mean they made a favorable decision in order to then get a job. It just means they made a decision. I agree with that, Your Honor. Right now, we're not looking to try the case on the merits. Right now, we're just looking for enough plausible evidence to move forward to take discovery, because without the opportunity to take discovery, we're never going to know, and this decision will remaintain it. And it shouldn't be that way. There should be transparency with the courts. All we're looking for is the opportunity to go forward. At the worst, there is nothing there. Maybe nobody will disclose anything. Maybe everyone will keep silent. A successful conspiracy is when no one divulges anything, and you don't know with most conspiracies. But in this case here, the judges have done enough. They've crossed judicial boundaries. They've given the appearance of bias. How could they possibly go to Rutter if they knew they were going to be rejected? What was Rutter's responsibility? It looks like the Pennsylvania Rules of Conduct state that he would have to notify the property and members of the judiciary if they did cross the line and come to them. Fox Rothschild as well, because they all knew about it. All I know is this. For 1983, we have certain people that were willful participants. They were all aware of it. They all received a benefit by it. The judges ruled, and then they went to Rutter. Rutter stated without any problem that these judges, and certain judges that ruled for him, have approached him for jobs after he ruled for him. I have many, many problems with that. It gives the appearance of bias. It questions the integrity of the judiciary. And if that happens in many cases, nobody would respect a court's decisions. I feel— You're right about that, but that's not our role, unless it fits within the parameters of state action limitations in 1983 and Igbo and Twombly. I don't disagree with anything you just said about the appearance of impropriety and how it taints judicial rulings coming out of that forum. But that doesn't mean that that gets you past the intricacies of Twombly and Igbo in 1983. Well, for 1983 and Twombly and Ashcroft, I would state that you have to look at the unlawful parallel context. There was just one judge to do this. It could be rogue. A judge maybe didn't do the right thing. It's alleged that it's more than one judge. I fail to believe that more than one judge would go to Tom Rotter after ruling for him. And this wasn't just any case. It wasn't a car accident case. You still need a connector of the parallel proceedings and the parallel lines. Well, my connector is they would not have crossed their judicial— they wouldn't have crossed the line unless they knew, through an advanced understanding, that they would be well accepted. I know it's a fine line. I'm looking at your Honor. And you did not plead that, did you? That they crossed the line? That they knew. That they knew in advance. And even more better, I guess, under Igbo and Twombly, that Rotter had done something to give them the reasonable belief that there's going to be a quid pro quo here. Well, in my complaint, I put in that there was any type of advanced motivation or any type of influence that they think they would receive would be equated to bribery. Whether they bribed somebody with cash, whether they bribed somebody with the promise or the knowledge that they could get a job by taking good care of them. Well, this statement of bribery, what you're alleging, fits right within Pennsylvania's definition of bribery. It is bribery. There was some type of influence. I'm not exactly—I believe I know what it is. I believe if we had the opportunity to dispose the correct parties, we'll find more. In the deposition of Wiley, you're correct, there was no follow-up questions. When did this take place? When did the judges approach you? The evidence is credible because it's from the defendant himself, Tom Rutter. I'm still trying to find out what—man, I think I spoke too quickly when I said it is bribery. Had Rutter done something to suggest to the judges it would be a favorable quid pro quo, that would be bribery. But, again, that's not here. We've got allegations of judges doing something which was improper. Rutter is kind of a passive ear to judges coming to him. That's what's alleged. I'm not suggesting any of this happened. In terms of favorable decisions by state judges, isn't it telling that appellate judges, more than one judge, affirmed the common court pleas judge, and the Supreme Court of Pennsylvania looked at this case and didn't make a different decision? In other words, through the entire appellate process in two different cases, the Pennsylvania state courts have essentially upheld the arbitration and found no wrongdoing. Well, there was wrongdoing. As my brief said— Well, that's your allegation. But quite a few judges looked at this case and didn't find anything, any misconduct, any deceit, any fraud, any wrongdoing. Well, I'll submit this. The judges, we believe that some of the judges should have recused themselves. We have information that we received, part of it from Tom Rutter's deposition. It's not in the record right now. But I know one Superior Court judge should have recused himself. He had no basis in making the decision. I will not mention a name, but if you want me to discuss just ever so briefly. No, no, that's all right. But it came out that Rutter had relationships with judges in his deposition. And, of course, he's going to have relationships with judges. But the question is, is when they become improper, judges should not be coming to him for jobs if they have no intention of leaving the bench. I state it's— Were you suggesting that they should come to him for jobs if they do have intentions? Absolutely. Your Honor, Judge McKee, if you intend to leave the bench one day, by all means I would expect if you wanted to stay in the practice of law, you would go to another law firm, you would maybe get involved with ADR. That's perfectly natural. Even if you ruled for the other side, you still have a reason why you're leaving the bench at your retirement. On the other side, if you have no intention of leaving the bench for the next decade, how could you go to somebody and put them on notice? I don't understand that at all. I'm really running out of time here. But why isn't it just as improper? If I'm contemplating at some ephemeral point in the future leaving the bench and I start getting my ducks in a row by letting certain folks know that I'm thinking about leaving the bench at some undeclared time and then sit in on a case involving that party, why isn't that every bit as improper as if I don't— as if I intend to leave the bench at the time? It's the same evil. I would say it's improper because if you have intentions of going to a specific firm and put them on notice, you surely cannot be impartial because this was a very ethically charged case. There was a lot of—there was fraud involved, consumer fraud. Disclosures were not made by the parties and also Arbiter Rudder. They signed disclosures and it was Rudder's ADR arbitration agreement. He basically affirmed it and executed it, and it was all not true. This was a highly charged case. But you lost on every one of those points, though, repeatedly. I mean, I hear you saying it, but isn't this kind of just a repackage of what's happened before? It would be a repackage absent the information that we got from Bob Tintner stating that the judges wouldn't—this is the defense that won in POs, and when we followed the appeal the next day, we didn't wait 30 days or 20 days. It was the next day and it caught him off guard. He called Wiley's. From what I heard, it was a long conversation, and he told them in so many words, what don't you get? You will never win against Rudder. Do you know who he is? They will not rule against him. That's very powerful to hear, Your Honor. That's one person's opinion. It's the lawyer's. I mean, it's not that surprising that a lawyer knowing Philadelphia relationships would say that about Tom Rudder. That does not mean at all that it's anything other than one person's view. The only thing that bags that up is the statement from the deposition, and we've discussed why that may have problems in terms of state action. But your time is up, and Mr. Cunoff was very good about watching his light. We let you have a little more time, but we do understand your argument. We've read the briefs. We'll rule on the motion, and we'll take the matter under submission. I thank you, Your Honor. Thank you very much.